# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KHANG A. C.,[1]              :
          *Plaintiff*,    :          **CIVIL ACTION**
    v.                   :          **No. 24-3092**
                         :
**FRANK BISIGNANO,**          :
**Commissioner of Social Security,**  :
          *Defendant*.   :

## MEMORANDUM OPINION

**HON. JOSÉ RAÚL ARTEAGA**                          **August 18, 2025**
**United States Magistrate Judge[2]**

The Commissioner of Social Security, through an Administrative Law Judge ("ALJ"), determined that Plaintiff Khang A. C. was not disabled and denied his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383. Khang A. C. seeks review of the decision pursuant to 42 U.S.C. § 405(g), arguing that substantial evidence does not support the ALJ's decision because the ALJ erred by (1) rejecting the examining psychologists' opinions; and (2) omitting certain

---

[1] Khang A. C. is referred to solely by his first name and initials in accordance with this Court's standing order. *See* Standing Order, *In re: Party Identification in Social Security Cases* (E.D. Pa. June 10, 2024), https://www.paed.uscourts.gov/sites/paed/files/documents/locrules/standord/SO_pty-id-ss.pdf (last visited August 13, 2025).

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). (*See* ECF 4.)

limitations from the hypothetical to the Vocational Expert ("VE"). (*See* ECF 8 at ECF p. 5, 18.) In response, the Commissioner argues that ALJ properly weighed the medical opinion evidence and substantial evidence supports the ALJ's finding.  (*See* ECF 11 at ECF p. 4.)

After careful review of the entire record, Khang A. C.'s request for review is **DENIED** and the Commissioner's decision is **AFFIRMED**.

## I.    BACKGROUND

On March 31, 2015, Khang A. C. filed an application for SSI under Title XVI of the Social Security Act. (ECF 5-3 at ECF p. 11.) He alleged disability due to autism since January 4, 1994. (*Id.* at ECF p. 3.) The Social Security Administration denied his application in August 2015. (ECF 5-4 at ECF p. 6-10.) In October 2017, Khang A. C. requested a hearing.  (*Id.* at 11.)  Hearings were held in October 2017 and February 2018. (ECF 5-2 at ECF p. 235-45, 181-234.)  In June 2018, an ALJ found that he was not disabled from March 31, 2015 (his application date) through the date of decision and denied his claim for SSI.  (ECF 5-3 at ECF p. 12-28.)  The next month, Khang A. C. requested Appeals Council review. (ECF 5-4 at ECF p. 107.) The Appeals Council granted his request, vacated the hearing decision, and remanded the case to an ALJ in June 2019. (ECF 5-3 at ECF p. 35-37.)

A third hearing was held in October 2019. (ECF 5-2 at ECF p. 129-80.) That December, the ALJ again found that Khang A. C. was not disabled from March 31, 2015, through the date of the decision, and denied an award of benefits.  (*Id.* at 103-23.)  Khang A. C. requested review of the decision in January 2020 (ECF 5-4 at ECF p. 169-71), which

the Appeals Council denied in March 2021, affirming the ALJ's decision as the Commissioner's "final decision." (ECF 5-2 at ECF p. 2.)

Following the denial of review, Khang A. C. filed a previous appeal to this Court. (*See* E.D. Pa. Civ. A. No. 21-2404.) In February 2022, the Court remanded his case for a new hearing on the Commissioner' motion, (ECF 5-9 at ECF p. 2), and the Appeals Council issued an order of remand in August 2022. (*Id.* at ECF p. 11-16.) In February 2024, Khang A. C. amended his claim to seek a closed period of disability from his date of application through December 31, 2020, acknowledging that, "[a]fter that date he began working above" the substantial gainful activity threshold. (ECF 5-12 at ECF p. 11.) A fourth hearing was held in March 2024. (ECF 5-8 at ECF p. 32-56.)

An ALJ issued another denial in May 2024, determining that the record established "some limitations in functioning but not to the degree alleged" and that Khang A. C. "is capable of performing past relevant work" that is not precluded by his residual functional capacity ("RFC"). (*Id.* at ECF p. 13, 20.) According to the ALJ, Khang A. C. had the RFC "to perform a full range of work at all exertional levels" but subject to non-exertional limitations: "he can apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables on or from standardized situations, but he cannot perform tasks with a production rate requirement" and he "can occasionally interact with supervisors, coworkers, and the public," and, in a routine work setting, he can "tolerate occasional changes . . . ." (*Id.* at ECF p. 11.) So, with the ability to perform "past relevant work as a dishwasher, a busser, and a silver wrapper," the ALJ found that Khang A.C. was not

3

disabled since March 31, 2015. (*Id.* at ECF p. 20, 22.) Because the Appeals Council did not review this decision, it became the Commissioner's final decision by operation of law on July 9, 2024. (*Id.* at ECF p. 3.)

Khang A.C. filed this action on July 16, 2024. (ECF 1.) He seeks judgment in his favor and an award of benefits or remand to the Commissioner again. (ECF 8 at ECF p. 1.)

## II.    LEGAL STANDARDS

The limited question before the Court on review of the Commissioner's final determination is not whether Khang A. C. was disabled. Rather, the Court must determine whether substantial evidence supports the Commissioner's finding that he was not, and whether the Commissioner, through the ALJ, correctly applied the relevant law. *See* 42 U.S.C. § 405(g). Any legal issues decided by the ALJ are subject to "plenary review." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Courts review the Commissioner's factual findings to see if "substantial evidence" exists to support them by looking at the existing administrative record. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). "[T]he threshold for such evidentiary sufficiency is not high . . . ." *Id.* at 103. Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Brown v. Kijakazi*, No. 20-6181, 2021 WL 5356802, at *5 (E.D. Pa Nov. 17, 2021) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It does not "mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

When substantial evidence supports the ALJ's decision, then the ALJ's findings of fact "shall be conclusive." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting 42 U.S.C.

§ 405(g)). This is the case even if the Court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). Courts may not "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). "The presence of evidence in the record that supports a contrary decision does not undermine the [ALJ's] decision so long as the record provides substantial evidence for that decision." *Malloy v. Comm'r Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009). The Court may "not substitute [its] own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

To decide whether the record was sufficiently developed, the Court reads the ALJ's decision "as a whole." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The Social Security Act directs an ALJ to state the "reason or reasons upon which [a denial of benefits] is based." 42 U.S.C. § 405(b)(1). It "requires administrative judges to explain only the dispositive reasons for their decisions, not everything else that they considered." *Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024). The ALJ's opinion need only include "sufficient development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000)).

After review of the entire record on appeal from a denial of SSI, the Court can enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for rehearing." 42 U.S.C. § 405(g). Khang A. C. bears the burden to explain how any "error to which [he] points could have made any difference" in the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409, 413 (2009).

Remand is not required when it would not affect the outcome of the case. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).

ALJs follow a five-step sequential evaluation process to determine whether a claimant is disabled under the Social Security Act., considering whether the claimant (1) is engaged in substantial gainful activity, (2) has a medically determinable impairment that is severe or combination of impairments that are severe, (3) has impairments or a combination of impairments of a severity that meet or medically equal the criteria of a listed impairment[3], (4) has the RFC[4] to perform the requirements of his past relevant work, and (5) is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(i)-(v). A claimant "bears the burden of proof at steps one through four" of the sequential evaluation process. *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). At step five, "the Commissioner bears the burden of establishing the existence of jobs in the national economy that an individual with the claimant's impairments is capable of performing." *Zirnsak*, 777 F.3d at 617; *see also Smith*, 178 F. App'x at 110 (holding that, at step five, the Commissioner "must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability").

---

[3] A list of impairments that warrant a finding of disability based solely on medical criteria without considering vocational criteria is set forth at 20 C.F.R., Part 404, Subpart P, App'x 1.

[4] "Residual functional capacity" is the most a claimant can still do despite" his physical and mental limitations from his "impairment(s), and any related symptoms, such as pain . . . ." 20 C.F.R. § 416.945(a)(1).

In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments of which he is aware, including those that are not severe. 20 C.F.R. § 416.945(a)(2). The RFC can include any "impairment(s), and any related symptoms . . . [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." *Id.* The ALJ must assess the claimant's RFC based on "all of the relevant medical and other evidence" including statements from "medical sources . . . family, neighbors, friends, or other persons." 20 C.F.R. § 416.945(a)(3); *see Burnett*, 220 F.3d at 121 (citations omitted).

"When weighing medical opinions . . . , administrative law judges must *consider* a range of factors, but all they must *explain* are the reasons for their decisions." *Zaborowski*, 115 F.4th at 638 (emphasis in original). Because Khang A. C. applied for benefits before March 27, 2017, 20 C.F.R. § 416.927 governed the ALJ's consideration of medical opinion evidence.[5] *See* 20 C.F.R. § 416.325. Under the applicable regulations, the ALJ was required to evaluate every medical opinion he received and consider whether it was rendered by a treating, examining, or non-examining provider; and, if from a treating provider, determine if the treating source deserves controlling weight; and otherwise consider the factors listed in 20 C.F.R. § 416.927(c)(2)-(6). 20 C.F.R. § 416.927. Those

---

[5] Effective March 27, 2017, the Social Security Administration amended the rules regarding the evaluation of medical evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). Under the new regulations, ALJs do not place medical sources into treating, examining, and non-examining categories and do not afford controlling weight to any opinion. *See* 20 C.F.R. § 416.920c. Because Khang A. C.'s application was filed *prior to* the new regulations' effective date, the opinion-weighing paradigm is applicable. *See* 20 C.F.R. § 416.927.

factors include the nature and extent of the treatment relationship, its length, the frequency of examination, supportability of the opinions, consistency of the opinions with the record as a whole, and any medical provider's specialization. *Id.* § 416.927(c)(2)-(6). The ALJ was not required to give a treating source "controlling weight" if their opinion on the "nature and severity" of the claimant's impairment(s) was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or was "inconsistent with the other substantial evidence." *Id.* at § 416.927(c)(2).

In general, medical opinions from treating sources were entitled to "more weight" because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)." *Id.* § 416.927(c)(2). A medical source who had "treated or evaluated [a claimant] only a few times or only after long intervals (e.g., twice a year)" would only be considered as a treating source "if the nature and frequency of the treatment or evaluation [was] typical for [the claimant's] condition(s)." *Id.* § 416.927(a)(2). Where a claimant's relationship with a medical source was "not based on [their] medical need for treatment or evaluation, but solely on [their] need to obtain a report in support of [their] claim for disability," the source would be considered as "a nontreating source." *Id.* Medical opinions from nontreating, examining sources were "[g]enerally" entitled to "more weight" than those from non-examining sources, although they were not entitled to controlling weight under the applicable regulations. *Id.* § 416.927(c)(1). So, the ALJ was not bound by any one medical opinion and was permitted to discount a treating opinion that conflicts with other objective tests or examination results. *Johnson*, 529 F.3d at 202-03.

8

Under the controlling regulations, the ALJ could disagree with, discredit, or disregard a physician's opinion because "determining a claimant's RFC is the province of the ALJ and not of the treating physician or consultative examiner." *Pascarello v. Berryhill*, No. 18-3406, 2019 WL 2288233, at *6 (E.D. Pa. May 28, 2019); *see also Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011) ("[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity."). Any opinions on whether Khang A. C. is disabled, his RFC, or the application of vocational factors are "not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings." 20 C.F.R. § 416.927(d)(1-2); *see id.* §§ 416.945, 416.946.

## III.    DISCUSSION

Khang A. C. contends that the ALJ's decision is "unsupported by substantial evidence." (ECF 8 at ECF p. 1.)  He argues that the ALJ erred by: (1) rejecting the opinions of the examining psychologists and omitting their assessed limitations from his RFC; and (2) considering the VE's testimony, which, in his view, did not address a hypothetical that adequately addressed his limitations and did not constitute substantial evidence that Plaintiff could perform competitive employment. (*See id.* at ECF p. 5, 8) He maintains that the ALJ's failures warrant judgment in his favor or a remand for further proceedings, but a review of the record demonstrates that substantial evidence supports the Commissioner's determinations and remand is not required.  *See Biestek*, 587 U.S. at 103.

**A.    The ALJ Properly Evaluated the Medical Opinion Evidence.**

Khang A. C. contends that the Commissioner's findings and conclusions are "erroneous as a matter of law" because the ALJ rejected the examining psychologists' opinions "for erroneous reasons." (ECF 8 at ECF p. 1, 5, 8, 14.)  In particular, he argues that the ALJ failed to afford sufficient weight to the findings of psychologists Dr. Joseph F. Puleo, Jr., Ph.D., and Dr. David McGalliard, Ph.D.  (*Id.* at ECF p. 8, 14.)  As a result, Khang A. C. asserts that the ALJ improperly assessed his RFC.  (ECF 12 at ECF p. 5, ECF 8 at ECF p. 14.)  Khang A. C. contends that the psychologists' opinions were supported by clinical findings and detailed explanations, so the ALJ should have assigned more weight to them.  (ECF 8 at ECF p. 9 (citing 20 C.F.R. § 416.927(c)(3)); *id.* at ECF p. 15.)  He also argues that Dr. Puleo and Dr. McGalliard's opinions were consistent with the rest of the record, and that the ALJ's opinion failed to address this consistency.  (*Id.* at ECF p. 9, 15.)  The Commissioner responds that the ALJ "properly weighed the medical opinion evidence," including the medical opinions of Dr. Puleo and Dr. McGalliard, "in accordance with the controlling regulations."  (ECF 11 at ECF p. 4-5.)  Upon review of the record, reversal or remand is not required because substantial evidence supports the ALJ's evaluation of the medical opinions regarding Khang A. C.'s limitations.

**i.    The ALJ Properly Weighed Dr. Puleo's Opinion**

During a comprehensive diagnostic psychological and vocational evaluation, Dr. Puleo found that Khang A. C. "applies himself to all tasks with conscientiousness [and] effort," but he has difficulty comprehending questions, his responses to question are off-track, and he presents himself in a "very naïve, immature [and] ego-centric manner."

(ECF 5-7 at ECF pg. 59.) Dr. Puleo assessed that Khang A. C.'s limitations include an inability to "manage work duties that require more than minimal levels of production." (ECF 5-7 at ECF p. 87.) He also opined that Khang A. C. "will have difficulty working too closely with others, due to his tendency for being immature and withdrawn in his ego-personality development . . . [Khang A. C.] needs a fair amount of structure, due to his disinclination for having initiative, or being self-directed." (*Id.*).

The ALJ afforded "some weight" to Dr. Puleo's opinion.  (ECF 5-8 at ECF p. 17.) In Khang A. C.'s view, the ALJ's reasoning for not affording "significant weight to Dr. Puleo's assessment" was erroneous, and thus he should "have been found to be disabled." (ECF 8 at ECF p. 7-8, 11.) Again, under the controlling regulations, an ALJ generally gives "more weight" to the medical opinions of treating or examining medical sources than to opinions from other medical professionals, but still "evaluate[s] every opinion [he] receive[s]." 20 C.F.R. § 416.927(c).  Khang A. C. does not assert that Dr. Puleo was a "treating source" who provided him "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with" him.  *Id.* § 416.927(a)(2). Even if he was, an ALJ is not required to give "controlling weight" to a treating source's medical opinion "on the issue(s) of the nature and severity of [a claimant's] impairment(s)" when the opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence." *Id.* § 416.927(c)(2). And ultimately, the ALJ—not a treating or examining physician—must make the disability and RFC determinations. 20 C.F.R. § 416.927(d). "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the

issue of functional capacity." *Brown*, 649 F.3d at 197 n.2. The same is true with respect to an examining physician's opinion.

Accordingly, in making his determination, the ALJ considered Dr. Puleo's observation that the jobs most appropriate for Khang A. C. are "manually oriented . . . so long as not too many work production demands are not expected of him." (ECF 5-8 at ECF p. 17 (citing ECF 5-7 at ECF p. 64).) He found that Khang A. C. may not easily adjust to working with others, and he would require a fairly structured type of setting. (*Id.*) The ALJ determined that Dr. Puleo's opinion "largely" supports the limitations he found, and that his opinion is "partially consistent" with the evidence as a whole. (*Id.*) For instance, the ALJ cites to record evidence which "demonstrates some clinical findings but improvement with engagement in therapy, the ability to sustain a structured schedule and work part-time even without treatment, and the ability to engage in many activities of daily living throughout the relevant period." (*Id.* at ECF p. 17 (citing ECF 5-6 at ECF p. 5-8; ECF 5-12 at ECF p. 30-33; ECF 5-7 at ECF p. 48-49, 59; 104-105, 119, 125, 132-33, 135, 146-49, 151, 164-65; ECF 5-13 at ECF p. 2-91; ECF 5-2 at ECF p. 130-246; ECF 5-8 at ECF p. 32-56).) Thus, the ALJ took Dr. Puleo's "opinion into consideration" even though "Dr. Puleo did not provide a function-by-function assessment . . . ." (*Id.*)

The ALJ appropriately afforded some, but not controlling, weight to Dr. Puleo's opinion because there is substantial evidence in the record— "such relevant evidence as a reasonable mind might accept as adequate"—that is inconsistent with Dr. Puleo's assessment. *Biestek*, 587 U.S. at 103 (citation modified). First, while Dr. Puleo asserts that Khang A. C.'s limitations include an inability to "manage work duties that require more

than minimal levels of production" (ECF 5-7 at ECF p. 87), Khang A. C. noted in a Function Report from January 2014, that he follows written and spoken instructions "very well," and handles stress "very well." (ECF 5-6 at ECF p. 9-10.) Similarly, during a "Psychiatric and Intelligence Evaluation" with Charles Johnson, Psy.D., in August 2015, Khang A. C.'s speech was "fluent and clear," his thought process was "coherent and goal direct with no evidence of hallucinations, delusions, or paranoia in the evaluating setting," and his "attention and concentration" and "recent and remote memory skills" were both "intact." (ECF 5-7 at ECF p. 47-48.) Additionally, Dr. Johnson assessed that Khang A. C's response style to the questions was "deliberate, orderly, and self-correcting. He worked with reflection and deliberation. Attention and concentration was [sic] good. [Khang A. C.] did not evidence significant emotional distress during the evaluation." (*Id.*) Lastly, Dr. Johnson indicated that there was no restriction on Khang A. C.'s ability to understand and remember simple instructions or carry out simple instructions; a mild restriction on his ability to make judgments on simple work-related decisions; and a moderate restriction on his ability to understand and remember complex instructions, carry out complex instructions, and to make judgments on complex work-related decisions. (*Id.* at ECF p. 51.) However, a "moderate" rating is described as "more than a slight limitation in his area but the individual is still able to function satisfactorily." (*Id.*) According to Dr. Johnson, Khang A. C. had no "marked" or "extreme" restrictions. (*See id.*)

Second, Dr. Puleo advised that Khang A. C. "will have difficulty working too closely with others, due to his tendency for being immature and withdrawn in his ego-

personality development . . . [Khang A. C.] needs a fair amount of structure, due to his disinclination for having initiative, or being self-directed." (ECF 5-7 at ECF p. 87.) However, in his Function Report from January 2014, Khang A. C. noted that he gets along "very well" with authority figures, has never been fired or laid off from a job because of problems getting along with people, and did not indicate that his illnesses, injuries, or conditions affect his talking, hearing, completion of tasks, concentration, understanding, following instructions, nor getting along with others. (ECF 5-6 at ECF p. 9-10.) Likewise, in August 2015, Dr. Johnson assessed Khang A. C. as "cooperative. His manner of relating, social skills, and overall presentation were adequate." (ECF 5-7 at ECF p. 47.) Dr. Johnson also indicated that Khang A. C. had no restrictions on his ability to interact appropriately with the public; a mild restriction on his ability to interact appropriately with supervisor(s) and co-workers; and a moderate restriction on his ability to respond appropriately to usual work situations and changes in a routine work setting. (*Id.* at ECF p. 52.) The ALJ properly considered Dr. Puleo's assessment in the context of the entire record, including Dr. Johnson's opinion, and explained why it was only "partially consistent with the evidence as a whole." (ECF 5-8 at ECF p. 17.)

Khang A. C. also faults the ALJ for "fail[ing] to mention or consider Dr. Puleo's opinion that it was 'necessary for him to have the assistance of a job coach.'" (ECF 8 at ECF p. 8 (citing ECF 5-7 at ECF p. 86).) In his assessment, Dr. Puleo determined that "a community-based work assessment can help to determine client's ability to function within a variety of work settings that are at a basic, or rudimentary level of skill development; client will also need to have assistance from a job coach." (ECF 5-7 at ECF

p. 87.)  But the ALJ noted that "education records reflect that [Khang A. C.] did very well at his half-day vocational program at the Delaware County Technical High School, where he achieved high marks and was one of the top performers in his class."  (*Id.* at ECF p. 119 (citing ECF 5-6 at ECF p. 259).)  The ALJ also considered and cited Khang A. C.'s March 13, 2024 administrative hearing testimony where he explained that, although he had a job coach when he began his part-time restaurant job, he would no longer need one, felt comfortable working there and thought he would "stick with the restaurant . . . ." (ECF 5-8 at ECF p. 46; *see id.* at ECF p. 17.)

The ALJ was entitled to consider all of the evidence, including Khang A. C.'s own testimony, and did so in determining his RFC.  *See Chandler*, 667 F.3d 356, 361 (3d Cir. 2011). Dr. Puleo's recommendation regarding Khang A. C.'s work-related limitations, including any opinion that Khang A. C. would require a job coach, was an opinion on an issue that is reserved for the Commissioner, as it related to the nature and severity of his impairments and the ALJ was not required to give any particular significance to it. (ECF 5-7 at ECF p. 86.)  A review of the record demonstrates that the ALJ did not "fail to assign great weight to Dr. Puleo's opinion for erroneous or nonexistent reasons," contrary to Khang A. C.'s argument.  (ECF 8 at ECF p. 11.)  Rather, the ALJ took Dr. Puleo's opinion "into consideration in finding that [Khang A. C.] could perform tasks that involve no production rate requirement; tolerate no more than occasional interaction with supervisors, coworkers, and the public; and tolerate no more than occasional changes in a routine work setting."  (*See* ECF 5-8 at ECF p. 17.)  Substantial evidence exists to support the ALJ's assessment of Dr. Puleo's findings.

### ii.    The ALJ Properly Weighed Dr. McGalliard's Opinion

In January 2018, Dr. McGalliard evaluated Khang A. C., who "presented as a quiet, mildly sullen young man, who acknowledged being unhappy with being referred for evaluation" before responding "positively to efforts to establish rapport" and subsequently cooperating in the evaluation.  (ECF 5-7 at ECF p. 102.)  In his opinion, Khang A. C. met the diagnostic criteria for an autism disorder.  (*Id.* at ECF p. 105.)  Dr. McGalliard opined that Khang A. C.'s "impairments have rendered him unable to sustain fulltime competitive employment," though "continued vocational training, psychosocial support and case management" would offer "a reasonable probability of helping this young man become a more contributing member of the community and economy."  (*Id.*)  Dr. McGalliard also gave an opinion regarding Khang A. C.'s ability to do mental work-related activities on a check box form.  (*Id.* at ECF p. 96.)  He opined that Khang A. C. was seriously limited in his ability to understand and remember very short and simple instructions, carry out very short and simple instructions, work in coordination with or proximity to others without being unduly distracted, make simple work-related decisions, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, interact appropriately with the general public, respond appropriately to changes in a routine work setting, and deal with normal work stress.  (*Id*.)  He assessed Khang A. C. as being unable to meet competitive standards in his ability to remember work-like procedures, maintain regular attendance and be punctual within customary, usually strict tolerances, sustain an ordinary routine without special supervision, and be aware of normal hazards and take appropriate precautions.  (*Id.*)  He

observed that Khang A. C. had no useful ability to function in his ability to maintain attention for two-hour segments and complete a normal workday and workweek without interruptions from psychologically based symptoms. (*Id.*) In addition, Dr. McGalliard found that Khang A. C. was limited but satisfactory in his ability to perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions and request assistance, accept instructions and respond appropriately to criticism from supervisors, and adhere to basic standards of neatness and cleanliness. (*Id.*) In response to a written interrogatory seeking his opinion as to whether Khang A. C.'s mental disorder was "serious and persistent," Dr. McGalliard opined that it was, explaining that Khang A.C. had "been diagnosed with Autism since early childhood," "[r]equired special education services throughout public school education," and had "not been able to function without support or assistance from family and/or educational professionals." (ECF 5-7 at ECF p. 98.)

The ALJ considered Dr. McGalliard's assessments, reported his findings in his decision, and ultimately afforded "little weight" to Dr. McGalliard's opinion. (ECF 5-8 at 18 (citing ECF 5-7 at ECF pg. 96-97).) He found that Dr. McGalliard's "own examination findings do not fully support the limitations he assessed" and that his "opinion is not consistent with the overall record." (*Id.*) The ALJ explained that Dr. McGalliard's examination findings do not support the limitations he assessed because, "[f]or example, he noted only mildly impaired recent and remote memory and only a moderate degree of conceptual disorganization and yet concluded that" Khang A. C. could not "meet competitive standards with respect to his ability to remember work-like procedures and"

was "seriously limited in his ability to understand, remember, and carry out very short and simple instructions." (*Id.*)  The ALJ determined that Dr. McGalliard's opinion was inconsistent with the overall record, "which documents some clinical findings but mild improvement with engaging in therapy, the ability to sustain a structured schedule and work part-time even without treatment, and the ability to engage in many activities of daily living throughout the relevant period." (*Id.* (citing ECF 5-6 at ECF p. 5-8, ECF 5-12 at ECF p. 30-33; ECF 5-7 at ECF 48-49, 59, 104-05, 119, 125, 132-33, 135, 146-49, 151, 164-65; ECF 5-13 at ECF p. 2-91; February 13, 2018, October 30, 2019, and March 13, 2024, Hearing Recordings).)

Khang A. C. argues that in not assigning more weight to Dr. McGalliard's opinion, the ALJ "substituted his lay opinion for" Dr. McGalliard's medical judgment. (ECF 8 at 17.)  However, it was up to the ALJ, not Dr. McGalliard, to decide whether Khang A. C.'s impairments "rendered him unable to sustain fulltime competitive employment." (ECF 5-7 at ECF p. 105.)  *See Chandler*, 667 F.3d at 361 (holding that it is the ALJ— "not treating or examining physicians or State agency consultants"—who ultimately determines whether a claimant is disabled).  And the Court cannot replace the ALJ's judgment with its own.  *See Zirnsak*, 777 F.3d at 611.  Remand is not required when there is *any* record evidence that would support a conclusion that is contrary to the ALJ's.  *See Malloy*, 306 F. App'x at 761.  The Court can only ask whether there is *enough* record evidence to allow a "reasonable mind" to find that the ALJ's assessment was adequate.  *See Pierce*, 487 U.S. at 565. There is.

First, in a June 26, 2015 Function Report, Khang A. C. noted he had memory problems, but stated that he was doing fine.  (ECF 5-6 at ECF 4, 8-9.)  He asserted that he did "very well" following written and spoken instructions. (*Id.* at 9.) Moreover, he indicated that he could care for his personal needs, care for his dog, cook dinner, organize his room, water plants, shop in stores, manage money, exercise, and watch movies.  (*Id.* at 5-8.) Second, at the October 30, 2019 hearing (*i.e.*, before the closed period of disability ending on December 31, 2020), Khang A. C. testified that he had started working as a restaurant dishwasher, where he got along with the people he worked with, and had no problems unless it got "a little bit crazy."  (ECF 5-2 at ECF p. 140-41, 150-51.)  He also testified that he used public transportation with no issues, continued to take kung fu classes, and even won kung fu medals at competition.  (*Id.* at 143-46.)  Third, while progress reports from Elwyn Outpatient documented Khang A. C.'s angry demeanor and resistance to therapy, (ECF 5-7 at ECF p. 132-33, 135), a discharge summary indicated that he had learned to express his emotions and increase the duration of conversations with his therapist through his therapy sessions.  (*Id.* at ECF p. 119.)

There is substantial evidence—not a "large or considerable amount of evidence"— but enough to permit a reasonable mind to "accept as adequate to support" the ALJ's assessment of the appropriate weight for Dr. McGalliard's opinion.  *Pierce*, 487 U.S. at 565. No more is required. Mindful of the fact that the court may not substitute its "own judgment for that of the factfinder," *Zirnsak*, 777 F.3d at 611, the Court will not reverse or remand the Commissioner's determination for further consideration of Dr. McGalliard's opinion.

B.    **The ALJ Did Not Err by Failing to Consider the Impact of Mental Limitations from the RFC and Hypothetical.**

Khang A. C. argues that the ALJ's decision should be reversed because, in his view, the hypothetical question posed to the VE should have included additional limitations "assessed by Dr. McGalliard and Dr. Puleo."  (ECF 8 at ECF p. 18.)  He argues that since the hypothetical "failed to convey all of [his] credibly established limitations, the VE's response did not constitute substantial evidence that he could perform work."  (*Id.* at ECF p. 19.)  The Commissioner responds that the ALJ properly evaluated the opinions of Dr. Puleo and Dr. McGalliard, and "fully accounted for all credibly established functional limitations in the hypothetical question to the [VE] and corresponding RFC assessment."  (ECF 11 at ECF p. 9.)  Because, as is explained above, substantial evidence supports the ALJ's decision with respect to the appropriate weight for the opinions of Dr. Puleo and Dr. McGalliard, this argument also fails to provide Khang A. C. with the relief he seeks.

Testimony of VEs in disability determination proceedings "typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert."  *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984).  Typically, the ALJ asks whether a hypothetical claimant with the same physical and mental impairments as the claimant can perform certain jobs that exist in the national economy. *Id.*  The hypothetical must "accurately portray" the claimant's impairments.  *Rutherford*, 399 F.3d at 554.  To accurately portray a claimant's impairments, the ALJ must include all "credibly established limitations" in the hypothetical.  *Id.* (citing *Plummer v. Apfel*, 186 F.3d 422, 431 (3d Cir. 1999)).

At the March 2024 hearing, the ALJ asked the VE "to consider a hypothetical individual the same age, level of education and background as" Khang A. C. who "is physically capable of doing work at any exertional level, but there are restrictions."  (ECF 5-8 at ECF p. 51.)  Specifically, the ALJ explained that the hypothetical "person is capable of applying common sense understanding in order to carry out detailed but uninvolved written or oral instructions and is capable of dealing with problems involving a few concrete variables on or from any standardized situation." (*Id.*) In addition, the hypothetical person "is unable to perform tasks with a production rate requirement and should be limited to only occasional interactions with supervisors, coworkers, and members of the public," and requires "a stable work environment, in which there are no more than occasional changes in the routine work setting." (*Id.*) Considering that hypothetical person, the VE testified that they could perform the jobs of dish washer, busser, or silver wrapper—Khang A. C.'s past work—and also laundry checker, product labeler, or garment folder.  (*Id.* at ECF p. 51-52.)  The ALJ then asked the VE to consider whether a second hypothetical individual with the same capabilities as the first, but who has "difficulty maintaining concentration and attention during the workday and could be expected to be off task at least 15 percent of a typical workday" could perform any of those jobs.  (*Id.* at ECF p. 52.)  The VE testified that "[a]ll jobs would be compromised and excluded" for an individual with the additional limitations.  (*Id.*)  Khang A. C.'s attorney had no questions for the VE and explained to the ALJ that the "second hypothetical [wa]s close enough to what" he would have asked.  (*Id.* at ECF p. 53.)

Unhappy with the ALJ's ultimate decision, Khang A. C. now complains that "the ALJ omitted some of [Khang A. C.'s] credibly established limitations" in his hypothetical to the VE.  (ECF 8 at ECF p. 19.)  He explains that "at a prior hearing" a VE "testified that, assuming the limitations assessed by Dr. McGalliard and Dr. Puleo, no work could be sustained."  (*Id.*; *see also* ECF 12 at ECF p. 7.)  However, his "objections to the adequacy of hypothetical questions posed to" the VE "boil down to attacks on the RFC assessment itself," and the Court cannot substitute its own judgment for the ALJ's.  *Rutherford*, 399 F.3d at 552, 554 n.8.  The Third Circuit does "not require an ALJ to submit to the [VE] every impairment *alleged* by a claimant." *Id.* at 554 (emphasis in original). When a limitation is supported by some evidence, but is controverted by other record evidence, it is within the ALJ's discretion whether to submit the limitation to the VE.  *Id.* "This discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason." *Zirnsak*, 777 F.3d at 615.  That is not what happened here.

Because substantial evidence supports the ALJ's RFC determination, the ALJ did not fail to include credibly established limitations in the hypothetical question posed to the VE.  As explained above, the ALJ determined that not all of Dr. McGalliard and Dr. Puleo's assessed limitations were fully credible and appropriately assessed Khang A. C.'s RFC based on that determination. As a result, substantial evidence—including Khang A. C.'s own testimony regarding his experience in a work environment—supports the ALJ's exercise of discretion to exclude any additional work-related limitations prescribed by Dr. McGalliard and Dr. Puleo from the hypothetical posed to the VE.  This argument does not warrant remand or reversal.

IV.    CONCLUSION

Upon review, the ALJ's decision and the underlying record show that his evaluation of Khang A. C. was appropriately supported by "such evidence as a reasonable mind might accept as adequate . . . ." *Biestek*, 587 U.S. at 103. Keeping in mind that the threshold for "evidentiary sufficiency is not high," *id.*, and for the above reasons, Khang A. C.'s request for reversal or further remand is **DENIED**. The Commissioner's final decision is **AFFIRMED** and this matter is **DISMISSED**.

An appropriate Order follows.